IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE: APPLICATION OF SADKORA
ENERGY AB FOR ASSISTANCE BEFORE
A FOREIGN TRIBUNAL.

Case No. _____

## DECLARATION OF JONAS BENEDICTSSON

JONAS BENEDICTSSON, DECLARES UNDER PENALTY OF PERJURY:

1.      I am a member of the law firm Baker & McKenzie Advokatryra in Stockholm, Sweden, counsel to Sadkora Energy AB ("Sadkora").  I submit this declaration in support of Sadkora's application for an order, pursuant to 28 U.S.C. § 1782, directing Uniwest Holding LLC, All Risks RE Corp., Harvard Business Services, Inc. and any other parties who have relevant evidence or knowledge to produce documents and give testimony for use in an arbitration proceeding in Sweden.

2.      I state the following upon information I have garnered in representing Sadkora in the arbitration in Sweden.  Because this affidavit is submitted only for the purpose of applying for an order to obtain evidence under 28 U.S.C. § 1782, this affidavit sets forth only some of the facts relevant to the claim asserted in the Swedish proceeding.

The Swedish Arbitration

3.      For many years, Sadkora, a Swedish company, has been involved in energy and infrastructure projects in Russia and the Baltic States, including Estonia.

4.      In early 2002, Sadkora and Aigar Ojaots, on behalf of his Estonian company, Oü Hansadroom, entered into a co-operation agreement and Shareholder Agreement that

created AS Trendgate ("Trendgate"), an Estonian company, to facilitate an oil export project.

5.    After the preliminary part of the oil export project was completed, Sadkora commenced negotiations to sell 70% of the shares of Trendgate to Severstaltrans.

6.    Sadkora and Ojaots agreed to and formed Hansa Sadkora Holding AB in order to effectuate their transfer to Severstaltrans.

7.    On December 30, 2003, at Ojaots demand, Sadkora and Ojaots executed an Amendment Agreement that replaced Oü Hansadroom with Uniwest, a Delaware LLC, the subject of the current application, as a shareholder in Hansa Sadkora Holding AB.[1] Ojaots signed the agreement on behalf of Uniwest.

8.    Shortly thereafter, Hansa Sadkora Holding AB sold 70% of its shares in Trendgate to Severstaltrans.

9.    During the summer of 2004, Sadkora agreed to sell Hansa Sadkora Holding AB's remaining interest in Trendgate to new investors.

10.    On the day of the closing of the sale of Sadkora's remaining 24%, Ojaots sought reimbursement of $220,000 for newly asserted expenses related to the initial facilitating costs of the project.

11.    Sadkora objected and maintained that such facilitating expenses were to be paid by Trendgate pursuant to the Shareholders Agreement.

12.    Ojaots proposed that Sadkora seek reimbursement from Trendgate or its owners since he asserted it could still be argued as a cost of the project.

---

[1] Uniwest Holding LLC, which later changed its name to Antonina Tann LLC (collectively referred to as "Uniwest"), does business and has its principal place of business at 25 Greystone Manor, Lewes, DE 19958-9776.

-2-

13.     Sadkora informed Ojaots that it was unlikely Trendgate or its owners would make such a concession.

14.     Ojaots recognized this, but maintained that it was worth the effort.

15.     Sadkora and Ojaots, on behalf of Uniwest, entered into a Settlement Agreement (Exhibit A), whereby Sadkora would advance Uniwest $220,000 for the fees Ojaots asserted and Sadkora would request reimbursement from Trendgate and its owners.  If, however, Trendgate and its owners refused to pay the $220,000 in fees, Uniwest would repay the $220,000 to Sadkora.

16.     Sadkora asked Trendgate and its owners if they would pay the $220,000 and they refused.

17.     The refusal was communicated to Ojaots, who has since failed to reimburse the $220,000 to Sadkora.

18.     Based on information from the Delaware Secretary of State, Uniwest is still formally active in the State of Delaware and has not been dissolved.  However, the company is no longer in good standing as it has not paid its taxes and fees to the State for numerous years

19.     Harvard Business Services, Inc. ("Harvard") does business and has its principal place of business at 16192 Coastal Highway, Lewes, Delaware 19958.  Harvard  was Uniwest's registered agent until it resigned on January 4, 2008.  (Exhibit B).  Uniwest does not have the required registered agent in Delaware at this time.

20.     Sadkora asserts that Ojaots emptied Uniwest of all of its assets and has left it to wither without any recourse available to its creditors, including Sadkora.  Sadkora has therefore instituted arbitration proceedings pursuant to the Settlement Agreement, in

NYCDMS/1082119.3

Sweden, in order to collect its $220,000 from Uniwest and/or Ojaots.

21.    Ojaots maintains that he "has never been affiliated with [Uniwest] as owner or shareholder or in control of the company in any other way . . . ." Simple common sense leads to the conclusion that Ojaots would not have forfeited his earnings in Oü Hansadroom, in the amount of $2,000,000, to a company he did not control and with which he had no affiliation.

22.    Moreover, Ojaots's assertions are contradicted by the Affidavit of Harvard, Uniwest's registered agent, which states that "The Initial Members of the company" consists solely of Ojaots. (Exhibit C). The Affidavit further states:

> The members have the right to manage the Company and are granted all rights, powers, authority and authorization necessary, appropriate, advisable and/or convenient to manage the Company and to determine and carry out its affairs.

23.    It is Sadkora's position that Ojaots never had any intention of fulfilling his obligation to repay the $220,000. Ojaots caused Uniwest's funds to be moved out of the company and beyond its control in order that Uniwest could not perform its obligation to repay Sadkora the $220,000. Under these facts, Sadkora is arguing in the Swedish arbitration that it is entitled to pierce the corporate veil of Uniwest and pursue Ojaots individually.

24.    Harvard, as the original registered agent of Uniwest, has documents relating to the creation of Uniwest, as well as information concerning the individuals it dealt with on behalf of Uniwest. These documents and information are directly relevant to the piercing the corporate veil claim being asserted in the arbitration. Of course, Uniwest itself has relevant documents as well.

25.    According to the documents submitted by Ojaots in his statement of defense, All

- 4 -

Risks RE Corp. ("All Risks") became the new and sole member of Uniwest on August 10, 2004. (Exhibit D). Therefore, All Risks has documents related to its purchase of all the shares of Uniwest, such as documents that will show whether Ojaots was the prior 100% shareholder of Uniwest, documents that will show whether Ojaots owns any or all the shares of All Risks and documents that will show whether Ojaots had an agreement with All Risks. These documents and information are directly relevant to the piercing the corporate veil claim being asserted in the arbitration.

26.    Harvard is also the registered agent of All Risks (Exhibit E). Harvard's Chairman, Richard H. Bell II, is the signatory to the Uniwest Company Agreement submitted by Ojaots, whereby All Risks became the 100% owner of Uniwest. (Exhibit D). As such, Harvard has documents relating to All Risks, including documents relating to the sale of Uniwest to All Risks, which documents will have information concerning the individuals who acted on behalf of Uniwest.

27.    The Arbitrator is obviously familiar with the claims and defenses being asserted in the arbitration. He has issued an order requiring the production of certain documents. Moreover, he has specifically granted Sadkora permission to submit a petition to the Delaware courts pursuant to 28 U.S.C. § 1782 and further respectfully requested the assistance of the Delaware courts should a petition be filed. (Exhibit F).

## The Relevance of the Requested Discovery

28.    Uniwest, All Risks and Harvard have information of great relevance to Sadkora's claim to pierce the corporate veil of Uniwest and hold Ojaots personally liable for the $220,000 Sadkora advanced to Uniwest pursuant to the Settlement Agreement. Sadkora seeks discovery from Uniwest and Harvard in order to show that, at all relevant times,

Ojaots was the sole owner and in complete control of Uniwest. As such, Ojaots would be personally responsible for the Settlement Agreement and liable for the debts of Uniwest.

29.    Sadkora has a particularly compelling need for the requested discovery. Ojaots has only produced one document from Uniwest and it supports his position. Uniwest, All Risks and Harvard are the only entities that have documents that show Ojaots relationship to Uniwest. Sadkora has no other available avenue to obtain supporting documentation.

30.    No previous application for this relief has been made.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April        2008

Jonas Benedictsson

- 6 -

# EXHIBIT A

SETTLEMENT AGREEMENT *No 2*

**Date: 24 August 2004**

Sadkora Energy AB, a Swedish limited liability company with its registered office at, Kungsgatan 4, 252 21 Helsingborg, Sweden, reg. no. 556290-8391 ("Sadkora")

Uniwest Holding LLC with its registered office at 25 Greystone Manor, Lewes, DE 19958-9776, reg. no. 33974-64 ("Uniwest")

Sadkora and Uniwest has co-operated in a joint project in Tallinn, Estonia concerning the development and construction of an oil terminal. Uniwest has contributed staff and assistance in connection to the obtaining of permits, staffing of the project and negotiations with authorities and alike.

The parties have agreed that Sadkora shall pay to Uniwest USD 220,000 covering Uniwest's expenses and work in relation to permits from authorities (second and last payment already paid by Uniwest). The amount shall be paid on 24 August 2004 to an account designated by Uniwest. This payment shall be recoverable, if Sadkora cannot recover these costs from the *AS Trendgate or* majority shareholders of Estview AB on or prior to 31 October 2004, by Sadkora from Uniwest as per the provisions in the shareholders agreement between Sadkora and Oü Hansadroom of 2003 regarding the previous ownership of AS Trendgate whereby all costs are financed by Sadkora.

By the payment all obligations of Sadkora and its affiliates in relation to Uniwest, and its affiliates, whether directly or indirectly, in relation to the project are fully and finally settled.

Uniwest agrees to keep confidential all and any information relating to Sadkora including the existence and contents of this agreement.

This agreement is governed by Swedish law.

Any dispute, controversy or claim arising out of or relating to this agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Rules for Expedited Procedure of the Arbitration Institute of the Stockholm Chamber of Commerce. The place of arbitration shall be Stockholm, Sweden. The language to be used in the arbitration shall be English. The decision of the arbitrator shall be final and binding on the parties, and may be enforced in any court of competent jurisdiction.

This agreement has been drawn up in two copies of which each party has taken one.

Sadkora Energy AB                    Uniwest Holding LLC


By: Nils Wärgården                    By: Aigar Ojaots

# EXHIBIT B

*CERTIFICATE OF FORMATION*

*OF*

### UNIWEST HOLDING LLC

*(A Delaware Limited Liability Company)*

**First:** *The name of the limited liability company is: UNIWEST HOLDING LLC*

**Second:** *Its registered office in the State of Delaware is located at 25 Greystone Manor, Lewes, Delaware 19958, County of Sussex. The registered agent in charge thereof is* Harvard Business Services, Inc.

**Third:** *The purpose of the limited liability company is to engage in any lawful activity for which limited liability companies may be organized under the Limited Liability Company Act.*

*IN WITNESS WHEREOF, I Richard H. Bell, being fully authorized to execute and file this document have signed below and executed this Certificate of Formation 30th day of May, 2001.*

*Richard H. Bell*
*Authorized Person*

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 05/30/2001
010256751 - 3397464

Exhibit C 13

State of Delaware
Secretary of State
Division of Corporations
Delivered 10:13 AM 01/04/2008
FILED 10:13 AM 01/04/2008
SRV 080026584 - 2486252 FILE

# CERTIFICATE OF RESIGNATION

OF

REGISTERED AGENT

Pursuant to Section 18-104(d) of the Delaware Limited Liability Company Act, Harvard Business Services, Inc. does hereby resign as registered agent for:

( 134 Companies – See attached List)

Written notice of the resignation was given to the limited liability companies at least 30 days prior to the filing of the certificate by mail to the last known address for the limited liability companies. The letter was mailed on December 4, 2007.

I, Richard H. Bell, II, Chairman of the Board of Harvard Business Services, Inc. do hereby sign this document to resign as registered agent of the above limited liability companies on this date of January 4, 2008.

*Richard H. Bell*

Richard H Bell, II
Chairman of the Board
Harvard Business Services, Inc.

# EXHIBIT C

# AFFIDAVIT OF THE AUTHORIZED PERSON

of

UNIWEST HOLDING LLC

(A Delaware Limited Liability Company)

I, Richard H. Bell, President of Harvard Business Services, Inc. the Delaware registered agent of UNIWEST HOLDING LLC, (the "Company") a Limited Liability Company organized under the laws of the State of Delaware do hereby swear and attest to the following on the date of the company's formation:

Acting as the Authorized Person and registered agent for the Company we have duly and properly filed all necessary formation documents at 9:00 a.m. on May 30, 2001 in strict compliance with the filing requirements of the State of Delaware Division of Corporations.

UNIWEST HOLDING LLC has met all formation requirements in accordance with Section 18-201 of Title 6 of the Delaware Limited Liability Company Act.

As of May 30, 2001, the Company's Registered Agent in Delaware is Harvard Business Services, Inc a Registered Agent in Good Standing since March 3, 1981.

The Delaware State Registration Number assigned to the Company by the Secretary of State of Delaware upon formation is 33974-64.

The Initial Members of the company, as named in the Company Agreement, are

*AIGAR OJAOTS,*
*PERSONAL ID CODE 37402266510*

The members have the right to manage the Company and are granted all rights, powers, authority and authorization necessary, appropriate, advisable and/or convenient to manage the Company and to determine and carry out its affairs.

As of May 30, 2001, the company is current on all Delaware taxes, fees and filing charges.

*Richard H. Bell*

Richard H. Bell, President
Harvard Business Services, Inc.

The above is a true and correct signature of Richard H. Bell.

*Anne Marie Delle Donne*
Anne Marie Delle Donne, Notary Public
My Commission Expires June 22, 2004.

# EXHIBIT D



# Apostille

### (Convention de La Haye du 5 Octobre 1961)

1. Country: United States of America

   This public document:
2. has been signed by Jennifer L. WIlliams

3. acting in the capacity of Notary Public of the State of Delaware

4. bears the seal/stamp of Jennifer L. Williams, Notary Public, State of Delaware

### Certified

5. at Dover, Delaware

6. the tenth day of August, A.D. 2004

7. by Secretary of State, Delaware Department of State

8. No. 0233111

9. Seal/Stamp:

10. Signature:

*Harriet Smith Windsor*

Secretary of State



*Company Agreement*

*of*

*Uniwest Holding LLC*

25 Greystone Manor,
Lewes, DE 19958-9776
USA

2004

# NOTARIZED VERIFICATION OF A TRUE SIGNATURE

of

Richard H. Bell, II

Authorized Person
UNIWEST HOLDING LLC

I, Jennifer L. Williams, a licensed Notary Public in the State of Delaware, appointed by Governor Ruth Ann Minner for a term extending to August 21, 2004, do hereby attest that the attached document entitled **Company Agreement** of UNIWEST HOLDING LLC bears a true and correct signature of Richard H. Bell, II, Authorized Person of UNIWEST HOLDING LLC affixed this date: August 10, 2004. The identity of the signatory is established, his powers duly ascertained.

Jennifer L. Williams
Notary Public
State of Delaware

## COMPANY AGREEMENT OF
## UNIWEST HOLDING LLC

This Limited Liability Company Agreement (this "Agreement") is made and entered as of by All Risks RE Corp., of Lewes, Delaware, USA (the "Member") as the sole Member of UNIWEST HOLDING LLC (the "Company"), a Delaware limited liability company formed pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. 18-101, et seq. - (the "Act") and is as follows:

### 1     NAME.

The name of the limited liability company is UNIWEST HOLDING LLC (the "Company")

### 2     PURPOSES AND POWERS.

The purposes of the Company shall be to engage in any lawful act of activity for which limited liability companies may be formed under the Act. The Company shall have all right, power and authority to do any and all acts and things necessary, appropriate, advisable and/or convenient for the furtherance and accomplishment of the purposes of the Company

### 3     REGISTERED OFFICE AND REGISTERED AGENT

The registered office of the Company in the State of Delaware is located at 25 Greystone Manor, Lewes, Sussex County, Delaware, 19958-9776, and the name of the registered agent of the Company at such address for service of process in the State of Delaware is Harvard Business Services, Inc. The Company may have such additional offices at such other place within or without the State of Delaware as the Members may from time to time determine or as the business of the Company may require

### 4     POWERS OF THE AUTHORIZED PERSON/REGISTERED AGENT

The authorized person who has signed the Certificate of Formation and filed the said Certificate with the Secretary of State office with the purpose of founding the Limited Liability Company shall do whatever is necessary and proper to perfect the organization of the Limited Liability Company, including the signing and attesting the Company Agreement of the Limited Liability Company, issuing and signing other documents in the name of the Limited Liability Company

The authorized person/registered agent may from time to time, upon request from the members or managers of the Limited Liability Company, sign and file all necessary applications and other written instruments of the Company, needed to engage primarily in provision of legal services as well as in any other lawful act of activity for which limited liability companies may be formed under the Act.

The Authorized Person and the registered agent may from time to time (and is herewith empowered to) sign and affix Company seal to written instruments of the Company (including powers of attorney, resolutions of members, managers, etc). Richard Bell, President of Harvard Business Services, Inc., being the authorized person for the purpose of filing the Limited Liability Company and/or the registered agent of the Limited Liability Company, Harvard Business Services, Inc., for above purposes is and shall be deemed to be an "authorized person" (as such term is used in the Act)

1

*The authorized person/registered agent cannot be held liable for any and all consequences of the above mentioned written instruments due to the fact that they were initiated by the member(s) and/or Managers of the Company, who is (are) the person (or persons) with the right to manage the Company*

## 5  MEMBERS

*The names, business, residence or mailing addresses of the Member is listed on Schedule A to this Agreement*

## 6.  MANAGEMENT.

*The Company's business, property, and affairs shall be managed and all Company powers shall be exercised by or under the direction of the Member The Member shall have all necessary powers to manage and carry out the Company's purposes, business, property, and affairs, including, without limitation, the power to exercise on behalf, and in the name, of the Company all of the powers described in Act § 18-106*

*The Member of the Company has appointed Alex Zingaus of Holon, Israel (DOB 4/15/1973, Passport 8267447) to serve as the Sole Manager of the Company with full powers and authority appurtenant to the position, being restricted only by the law Mr Alex Zingaus shall have all right, power and authority to do any and all acts and things necessary, appropriate, advisable and/or convenient for the furtherance and accomplishment of the purposes of the Company*

## 7  CAPITAL CONTRIBUTIONS.

*The member of the Company has contributed amounts, in cash and property, to the Company The member of the Company is not required to make any additional capital contribution to the Company*

## 8  CAPITAL ACCOUNT.

*The company will maintain a capital account for the member and the member will be furnished with a statement of its capital account as of the close of each fiscal year of the Company*

*The capital account of the member will be equal to the member's capital contributions increased by the profits (as determined for federal income tax purposes of the Agreement, and decreased by the amount of any cash distributions or the fair market value of any property distributions made to said member, and decreased by the losses (as determined for federal income tax purposes) of the Company allocated to said member pursuant to Section 11 of this Agreement*

*No interest will be paid by the company to the member on any amount credited to the member's capital account*

## 9  ALLOCATIONS OF PROFIT AND LOSSES.

*The company's profits and losses shall be allocated to the capital account balance of the Member*

2

10.    *DISTRIBUTIONS.*

At the time determined by the members but at least once during each fiscal year of the Company, the Member shall cause the Company to distribute any cash held by it which is not reasonably necessary for the operation of the Company Cash available for distribution shall be distributed to the Member of the Company in the same proportion as their then capital account balances.

11    *RESIGNATION OF MEMBERS.*

A member may resign upon not less than six (6) months prior written notice to the Company.

12.    *NOTICES.*

All notices and other communications required or permitted to be given pursuant to this Agreement shall be in writing and may be personally served, telecopied or sent by registered mail and shall be deemed to have been given when delivered in person, upon receipt of telecopy or three (3) business days after deposit in registered mail, registered or certified, postage prepaid, and properly addressed, by or to the appropriate party. For purposes of this Section 17, the addresses of the parties hereto shall be as set forth on Schedule A to this Agreement. The address of any party to this Agreement may be changed by a notice in writing given in accordance with the provisions hereof to all members and the Company

13.    *INTEGRATED AGREEMENT.*

This agreement constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all

This Agreement may not be modified or amended or any rights hereunder waived except by an instrument in writing signed by the party against whom such modification amendment or waiver is sought to be enforced

14    *PRONOUNS AND HEADINGS.*

As used herein, all pronouns shall include the masculine, feminine and neuter, and all defined terms shall include the singular and plural thereof whenever the context and facts require such construction. The headings, titles and subtitles in this Agreement are inserted for convenience of reference only and are to be ignored in any construction of the provisions of this Agreement Any references in this Agreement to "including" shall be deemed to mean "including without limitation".

15    *SUCCESSORS.*

The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto and, except as may be otherwise provided herein. their respective executors, administrators, heirs, permitted assigns and all other successors in interest

16    *PARTITION.*

The member hereby agrees that any successor to the member, shall not have the right while this Agreement remains in effect to have any property of the Company partitioned, or to file a complaint or institute any proceedings at law or in entity to have the property of the Company partitioned, and, to the fullest extent permitted by law, the member, on behalf of itself and its

3

*successors in interest, hereby waives any such right.*

### 17    REMEDIES CUMULATIVE.

*The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive its right to use any or all other remedies. Said rights and remedies are given in addition to any other right or remedy the parties may have by law, statute, ordinance, or otherwise*

### 18.    GOVERNING LAW.

*This Agreement and the rights, powers, duties and remedies of the parties hereunder shall be governed by and interpreted in accordance with the laws of the State of Delaware, and all rights, powers, duties and remedies shall be governed by such laws without regard to principles of conflicts of laws*

*IN WITNESS WHEREOF, the undersigned, intending to be bound hereby, have duly executed this Agreement.*

Richard H. Bell II
Authorized Person

4

*Schedule A*

Name, Membership Share and Address of the Member of the Limited Liability Company:

| NAME | MEMBERSHIP SHARE | ADDRESS |
|------|------------------|---------|
| *All Risks RE Corp.* | *100%* | *25 Greystone Manor, Lewes, Sussex County, Delaware, 19958-9776* |

*Attest:*

Richard H. Bell, II
Authorized Person

5

# EXHIBIT E

# CERTIFICATE OF INCORPORATION

OF

## ALL RISKS RE Corp.

### A CLOSE CORPORATION

*FIRST:* The name of the corporation is:

**ALL RISKS RE Corp.**

*SECOND:* Its registered office in the State of Delaware is located at 25 Greystone Manor, Lewes, Delaware 19958-9776, County of Sussex. The registered agent in charge thereof is *Harvard Business Services, Inc.*

*THIRD:* The purpose of the corporation is to engage in any lawful activity for which corporations may be organized under the General Corporation Law of Delaware.

*FOURTH:* The total number of shares of stock which the corporation is authorized to issue is **750** shares having a par value of **$100.00** per share.

*FIFTH:* The corporation shall make no offering of any of its stock which would constitute a "public offering" within the meaning of the U.S. Securities Act of 1933, as amended.

*SIXTH:* This corporation shall be perpetual unless otherwise decided by a majority.

*SEVENTH:* All of the corporation's issued stock, exclusive of treasury shares, shall be held of record by not more than thirty (30) persons.

*EIGHTH:* All of the issued stock shall be subject to the following restriction on transfer permitted by Section 202 of the General Corporation Law: "Each stockholder shall offer to the Corporation or to other stockholders of the corporation a thirty-day (30) first right of refusal option to purchase his stock should he elect to sell his stock."

*NINTH:* The incorporator is Harvard Business Services, Inc., whose mailing address is 25 Greystone Manor, Lewes, Delaware 19958-9776.

*TENTH:* To the fullest extent permitted by the Delaware General Corporation Law a director of this corporation shall not be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

I, Richard H. Bell, for the purpose of forming a corporation under the laws of the State of Delaware do make, file and record this certificate, and do certify that the facts herein stated are true; and have accordingly signed below, this September 20, 2000.

Signed and Attested to by: *Richard H. Bell*

Richard H. Bell, President
HARVARD BUSINESS SERVICES, INC.

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 09/20/2000*
*001473733 – 3290333*

# EXHIBIT F

PROCEDURAL ORDER N°2

Arbitration F (106/2007)

of the Arbitration Institute of the Stockholm Chamber of Commerce

In the matter of an arbitration between:

Claimant

SADKORA ENERGY AB

and

Respondents

(1)    ANTONINA TANN LLC (PREVIOUSLY KNOWN AS UNIWEST HOLDING LLC)

(2)    MR AJGAR OJAOTS

I.    FACTUAL BACKGROUND

1.    On 26 February 2008, in connection with the filing of its Statement of Claim on that date, the Claimant requested guidance from the Sole Arbitrator as to the proper course to take for service of its submissions upon Respondent No. 1. The Claimant indicated that it has been unable to find a current address for service of process upon Respondent No. 1. It is apparent that the agent who serviced Respondent No. 1 in Delaware at the outset of these proceedings no longer maintains any relationship with Respondent No. 1.

2.    As part of its Statement of Claim, the Claimant sought an order from the Sole Arbitrator for the production of documents, directed against both Respondents, should Respondent No. 2 continue to maintain that he does not own or control Respondent No. 1. The Claimant indicated that this order would be used to petition the courts of Delaware for the production of documents from Respondent No. 1 pursuant to 28 USC §1782.

3.    Also on 26 February 2008, the Sole Arbitrator asked Respondent No. 2 to provide any contact information it may have for Respondent No. 2.

4.    On 29 February 2008, counsel for Respondent No. 2 informed the Sole Arbitrator that "Mr Ojaots has no knowledge of any contact information of Antonina Tann LLC and due to that may not provide any information thereto. Mr Ojaots has no contacts whatsoever to the said company or to possible individuals behind [the company]."

5.    On 18 March 2008, Respondent No. 2 submitted its Statement of Defense, confirming its position that it has never owned or controlled Respondent No. 1. The Statement of Defense was accompanied by several witness statements signed by Respondent No. 2 and other individuals, repeating this factual assertion. Also included with Respondent No. 2's filing was the Company Agreement of Respondent No. 1. This document suggests that Respondent No. 2 did not own Respondent No. 1 at the time the relevant contract was signed by Respondent No. 1.

6.    On 25 March 2008, the Claimant submitted a Partial Reply to the Statement of Defense. In this submission, the Claimant reiterated its request for a document production order. It also sought a six-week stay of the proceedings, in light of (1) the need to receive documents from the Respondents with respect to their relationship, and (2) a serious medical condition of the Claimant's representative, which will require surgery.

II.    ORDER FOR THE PRODUCTION OF DOCUMENTS

7.    *Both Respondents* are hereby ordered to produce *to the Claimant* copies of the following documents, to the extent that they are in either Respondent's possession or control:

    a.  all company and shareholder agreements of Uniwest Holding LLC and/or Antonina Tann LLC, except for the Uniwest Holding LLC Company Agreement dated 10 August 2004 that was submitted with Respondent No. 2's Statement of Defense;

    b.  all amendments to the documents referred to in paragraph (a);

    c.  all documents evidencing membership or participation in Uniwest Holding LLC and/or Antonina Tann LLC, including shareholder or company member certificates;

    d.  all company and shareholder agreements of All Risks RE Corp.;

    e.  all amendments to the documents referred to in paragraph (d);

    f.  all documents evidencing membership or participation in All Risks RE Corp., including shareholder or company member certificates;

    g.  all documents evidencing an agreement between Respondent No. 2 and All Risks RE Corp.; and

    h.  all documents evidencing the grant of authority to represent Uniwest Holding LLC and/or Antonina Tann LLC during the year 2004, including powers of attorney.

8.    As indicated in the new procedural timetable below, the Respondents shall produce all documents responsive to this Order no later than 9 April 2008.

9.    The Sole Arbitrator expressly grants the Claimant permission to submit a petition to the Delaware courts on the basis of this Order pursuant to 28 USC §1782, and respectfully asks the Delaware courts for their assistance in this regard, should such a petition be submitted.

## III.  TIMETABLE

10.    In light of the considerations set forth in the Claimant's Partial Statement of Reply, the procedural timetable is hereby modified as follows:

| N° | Date | Party | Description |
|---|---|---|---|
| (a) | 26 February 2008 | Claimant | Statement of Claim |
| (b) | 18 March 2008 | Respondents | Statement(s) of Defence |

| (b.1) | 9 April 2008 | Respondents | Production of Documents |
|---|---|---|---|
| (c) | 23 April 2008 | Claimant | Supplemental Statement of Reply |
| (d) | 7 May 2008 | Respondents | Statement(s) of Rejoinder |

11.    It is noted that the Parties disagree as to the need for an oral hearing in this case. The Claimant has requested that such a hearing be held, while Respondent No. 2 submits that no oral hearing is necessary. The Sole Arbitrator will issue an order in this regard as soon as possible after the submission of the Respondents' Rejoinder.

12.    The time limits in paragraph 1 have been established in accordance with the spirit of Article 19(3)(iii) of the SCC Expedited Arbitration Rules, but with due consideration of the need to provide additional time to ensure that communications reach all of the Parties, and the procedural complications that have arisen and which are described in detail above. Extensions of time (and adjustments to the above calendar if needed) may be granted by the Sole Arbitrator at his discretion provided that a duly justified request is submitted before or, if not possible, immediately after the event preventing a Party from complying with the deadline.

13.    Pursuant to Article 36 of the SCC Expedited Arbitration Rules, an award shall in principle be rendered no later than three months from the date on which the case was referred to the Sole Arbitrator. In light of these changes to the procedural timetable, it is now clear that this will not be possible. Consistent with the SCC Expedited Arbitration Rules, the Sole Arbitrator will therefore seek an extension of the deadline from the SCC Arbitration Institute as necessary to ensure that the Parties have a full opportunity to present their case.

Noah Rubins
Sole Arbitrator

26 March 2008